Opinion issued April 13, 2006
















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00546-CV
  __________
 
TRUCK INSURANCE EXCHANGE, Appellant
 
V.
 
STEVEN CHALFANT, Appellee
 

 
 
On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2004-10195
 

 
 
O P I N I O N
           This is an interlocutory appeal from the trial court’s denial of Truck Insurance
Exchange’s motion for summary judgment.


 In this case, we must determine whether
the Business Auto Policy (“the policy”) that Truck Insurance Exchange (TIE) issued
to Construction Coordinator Inc., a corporation of which Steven Chalfant is president,
provides uninsured/underinsured motorist (“UM/UIM”) coverage for Chalfant’s
accident, which occurred while he occupied his personal auto. We conclude that it
does not. Accordingly, we reverse the order of the trial court.
Background
          Chalfant was injured while driving his personal automobile–a 1994 Infiniti J30. 
The accident occurred during the effective period of the policy issued to Construction
Coordinator Inc. by TIE. The following facts are undisputed:
•TIE issued a Business Auto Policy of insurance to Construction
Coordinator Inc.;
 
          •        The policy was in full force and effect at the time of the occurrence;
 
          •        Chalfant was employed as president of the insured, Construction
Coordinator Inc.;
 
          •        The policy provided, by endorsement, for UM/UIM coverage for which
a premium was paid;
 
          •        The policy provided coverage for any person designated on the policy
or any other person occupying a covered automobile;
 
          •        Chalfant was not a “designated person” on the policy; 
 
          •        The only auto specifically identified on the policy was a 1999 GMC
Yukon; and 
 
          •        Chalfant was driving his personal automobile, a 1994 Infiniti J30, at the
time of the accident.

          Chalfant sued Mid Century Insurance Company


 and TIE for breach of contract
in an attempt to recover UM benefits under his policy for an accident that occurred
while he was driving his personal auto.


 In his second amended petition, Chalfant
stated that he “was a covered person [under the TIE policy] by virtue of his
position/employment as President of Construction Coordinator Inc.” Chalfant further
asserted that, “as a matter of law the liability insurance for both specifically described
autos and non-owned autos is equally applicable for uninsurance/underinsurance
coverage.” Alternatively, he alleged that TIE’s “selections, symbols and references
as contained on the Certificate/Declaration and uninsured/underinsured endorsement
creates an ambiguity of the terms of the insurance agreements as a matter of law.” 
          By motion for summary judgment, TIE sought a declaratory judgment on the
coverage issue. Chalfant responded that his “personal vehicle while utilized in
business is a ‘covered vehicle’ as a matter of law.” In an affidavit attached to his
response, Chalfant testified that “[a]t the time of the automobile collision I was
utilizing the Infiniti J 30 motor vehicle in furtherance of the business and/or personal
affairs of Construction Coordinators, Inc., the named insured under the policy of
insurance.” Chalfant further testified that “I did not reject uninsured/underinsured
coverage. In fact, I requested that uninsured/underinsured coverage be retained.” 
          The trial court denied TIE’s summary judgment in favor of Chalfant, finding
that Chalfant was entitled to coverage under the policy’s UM/UIM provision. We
must determine the scope of coverage the UM/UIM endorsement provides and
whether the endorsement is ambiguous such that a reasonable interpretation of the
policy provides Chalfant coverage.
Summary Judgment
          Because the propriety of a summary judgment is a question of law, we review
the trial court’s summary judgment decision de novo. Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a summary judgment
motion, a movant has the burden of proving that it is entitled to judgment as a matter
of law and that there is no genuine issue of material fact. Tex. R. Civ. P. 166a(c);
Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 23 (Tex. 1990); Farah v. Mafrige
& Kormanik, P.C., 927 S.W.2d 663, 670 (Tex. App.—Houston [1st Dist.] 1996, no
writ). In deciding whether there is a disputed material fact issue precluding summary
judgment, proof favorable to the non-movant is taken as true, and the court must
indulge every reasonable inference and resolve any doubts in favor of the
non-movant. Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.
1995); Lawson v. B Four Corp., 888 S.W.2d 31, 33–34 (Tex. App.—Houston [1st
Dist.] 1994, writ denied). We may affirm a summary judgment only when the record
shows that a movant has disproved at least one element of each of the plaintiff’s
claims or has established all of the elements of an affirmative defense as to each
claim. Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Farah,
927 S.W.2d at 670. If the movant establishes a right to summary judgment, the
burden shifts to the non-movant to present evidence raising a fact issue. Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).
          We note, moreover, that a summary judgment must stand or fall on the grounds
expressly presented in the motion. McConnell v. Southside Indep. Sch. Dist., 858
S.W.2d 337, 339–41 (Tex. 1993). When a summary judgment does not specify the
grounds on which the trial court denied it, the reviewing court will affirm the
judgment if no theory included in the motion is meritorious. See Browning v.
Prostok, 165 S.W.3d 336, 344 (Tex. 2005); Summers v. Fort Crockett Hotel, Ltd., 902
S.W.2d 20, 25 (Tex. App.—Houston [1st Dist.] 1995, writ denied).
Business Auto Policy
          In issues one and two, TIE argues that the policy is unambiguous and provided
no coverage to Chalfant for the accident in question, which occurred while Chalfant
was occupying his personal auto.
Ambiguity
          The general rules of contract construction govern insurance policy
interpretation. State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995). 
“Whether a contract is ambiguous is a question of law that must be decided by
examining the contract as a whole in light of the circumstances present when the
contract was entered.” Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940
S.W.2d. 587, 589 (Tex.1996). A contract is unambiguous as a matter of law if it can
be given a definite or certain legal meaning. Id. at 589. Conversely, if an insurance
contract is subject to more than one reasonable interpretation, the contract is
ambiguous and the interpretation that most favors coverage for the insured will be
adopted. Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997). 
Therefore, we must discern whether there is more than one reasonable interpretation
of the UM/UIM endorsement. In making this determination, we note that an
ambiguity does not arise simply because the parties advance conflicting
interpretations of the contract. Columbia Gas, 940 S.W.2d at 589.
UM/UIM Coverage
          Here, the UM/UIM endorsement provides three categories of “who is an
insured” under the policy: 
1.You and any designated person and any family member of
either. 
 
          2.       Any other person occupying a covered auto.
 
          3.       Any person or organization for damages that person or
organization is entitled to recover because of bodily injury
sustained by a person described in 1. or 2. above.



          The insurance policies and the summary judgment evidence demonstrate that
the TIE policy excludes coverage for Chalfant. In order for the policy to cover him,
Chalfant must fall within one of the categories of “who is an insured.” 
          Designated Person or Family Member
          The Business Auto Coverage Form of the TIE policy provides, “Throughout
this policy the words ‘you’ and ‘your’ refer to the Named Insured in the
Declarations.” The declarations page of the TIE policy provides that Construction
Coordinator Inc. is the “named insured.” Construction Coordinator Inc. is also the
“named insured” in the UM/UIM endorsement. The UM/UIM endorsement defines
“designated person” as “an individual named in the schedule. By such designation,
that person has the same coverage as you.” Construction Coordinator Inc. did not
name a “designated person” in the space provided in the UM/UIM endorsement. 
          The name of “Steven Chalfant” does not appear anywhere in the policy or the
endorsements. As a result, Chalfant does not qualify as “you” or “designated person”
under the endorsements.   Additionally, Chalfant does not qualify as a “family
member” under the endorsements. “Family member” is defined in the endorsements
as “a person related to you [Construction Coordinator Inc.] by blood, marriage, or
adoption who is a resident of your [Construction Coordinator Inc.] household,
including a ward or foster child.” Chalfant is obviously not related to Construction
Coordinator Inc. by blood, marriage, or adoption. Of course, he also does not reside
in Construction Coordinator Inc.’s household. A corporation simply cannot have a
“family” as that term is defined in the policy. See McKee, 943 S.W.2d at 457; 
Webster v. U.S. Fire Ins. Co., 882 S.W.2d 569, 572 (Tex. App.—Houston [1st Dist.]
1994, writ denied). Because he does not qualify as a “designated person,” a “family
member,” or “you,” Chalfant does not fall within the first classification of who is an
insured under the UM/UIM endorsement.
          Covered Auto
          The second classification identifies an insured as “any other person occupying
a covered auto.” The UM/UIM endorsement adds definitions which have “special
meaning” for UM/UIM insurance. The endorsement defines “covered auto” as
follows:
          4.       “Covered auto” means an auto:
 
                    a.       owned or leased by you or
 
b.while temporarily used as a substitute for an owned
covered auto that has been withdrawn from normal use
because of its breakdown, repair, servicing, loss or
destruction.
 
Liability coverage of this policy must apply to the covered auto. 
Covered auto includes autos (described in a. and b. above) for which
Uninsured/Underinsured Motorists Insurance has not been rejected in
writing.
   
There is no contention that the Infiniti J30 was being used as a temporary substitute
or that the GMC Yukon was broken down. Therefore, part b. of the definition does
not apply. As such, to be a “covered auto,” the Infiniti J30 would have to be owned
or leased by Construction Coordinator Inc., and it was not.
          Construction Coordinator Inc. did not list additional autos to be covered under
the UM/UIM endorsement. Specifically, the checked box in the “description of
covered autos” reflected an intent to cover “any auto designated in the declarations
of the policy (by the letters ‘UM/UIM’) and an auto ownership of which is acquired
during the policy by you as a replacement therefor.” There were no autos in the
declaration of the policy, however, that were designated with the letters “UM/UIM.” 
          Arguably, this creates an ambiguity. Assuming but without deciding that an
ambiguity exists, interpreting the policy in favor of the insured, Construction
Coordinator Inc., would result in a determination that UM/UIM coverage exists for
Construction Coordinator Inc.’s Yukon—the only vehicle identified in the policy. 
          Chalfant contends that the GMC Yukon is listed in “the section describing the
autos Construction Coordinator Inc. actual (sic) own not all covered autos. Indeed,
if [TIE] wanted to limit uninsured/underinsured coverage more so than liability
coverage, it could have simply typed the number 7 in the box on the Declaration Page
across from uninsured/underinsured.”


 Chalfant argues that a reasonable
interpretation of this allegedly ambiguous policy would provide for UM/UIM
coverage of the same autos that are covered by liability insurance—“both owned and
identified vehicles as well as rental and non owned vehicles, i.e., vehicles owned by
the insured’s employees.” We disagree.
          Chalfant contends that, because he was furthering the business or personal
affairs of Construction Coordinator Inc. at the time of the accident, he is entitled to
coverage. We agree that this status would have afforded Chalfant liability coverage
in the event that he had been the negligent party. However, the fact that liability
coverage would apply to certain non-owned autos is no indication that UM/UIM
coverage would be provided to the occupants of such non-owned autos.
          Where only a corporation is named as an insured and no name is provided as
a designated person in the UM/UIM endorsement, the policy has a certain and
definite legal meaning which did not include coverage for occupants of a vehicle
which was not owned or leased by the corporation.
          We sustain issues one and two.
Written Rejection
          In issue three, TIE contends that a written rejection of UM/UIM insurance is
not required for non-owned autos.
          Chalfant argues that, because the liability coverage provision of the policy
provides liability coverage not only for those autos owned by Construction
Coordinator Inc., but also for hired autos


 and non-owned autos,


 the policy must also
necessarily provide UM/UIM coverage for anyone occupying a non-owned auto,
unless the insured previously rejected UM/UIM coverage in writing for each such
non-owned auto. Although it is true that written rejections are normally required by
article 5.06-1 of the Texas Insurance Code


 when liability coverage is provided,
written rejections are not required for vehicles covered by “hired and non-owned auto
liability insurance [which is] distinguished from ‘auto liability insurance’ as
contemplated by article 5, subchapter A of the insurance code.” Taylor v. State Farm
Lloyds, Inc., 124 S.W.3d 665, 670 (Tex. App.—Austin 2003, pet. denied).
          Accordingly, we sustain issue three.
Conclusion
          We reverse the trial court’s order denying summary judgment and render
judgment that Chalfant take nothing from TIE on his coverage-related claims.
 
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.